## Louisville Lozier Company v. City of Louisville.

(Decided May 22, 1914.)

### Appeal from Jefferson Circuit Court (Criminal Division).

Licenses—Public Garage—Isolated Sales of Automobiles—A corporation, acting as agent of several automobile companies and operating a garage for its own use, which sells, within the space of a little over a year, four automobiles stored in its garage, and which were not shipped to it from other States to be delivered to purchasers on orders previously taken, is subject to the provisions of an ordinance imposing a license tax on the owner or operator of a public garage in which automobiles or similar machines are kept in storage or for sale or rent.

HELM & HELM for appellant.

CLEM. W. HUGGINS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Defendant, Louisville Lozier Company, was fined $50
in the Louisville Police Court for doing business in vio-
lation of the general license ordinance of the city of
Louisville. On appeal to the Jefferson Circuit Court,
Criminal Division, the law and facts were submitted to
the court, and a fine of $55 and costs was imposed on de-
fendant. Defendant appeals.

Section 99 of the General License Ordinance of the
city of Louisville, ratified September 17, 1908, and pub-
lished September 23, 1908, is as follows:

"Each person, firm or corporation who keeps or
operates a public garage in which automobiles or similar
machines, driven by gasoline, steam or electricity, are
kept in storage or for sale or rent, shall pay a license of
one hundred dollars per year."

The Louisville Lozier Company is a corporation
organized under the laws of Kentucky, with power to
buy and sell automobiles, and rent and store same. It
has a place of business in the city of Louisville on the
north side of Broadway between Fourth and Fifth
streets. According to the evidence for the city of Louis-
ville, the defendant had stored in this room four ma-
chines—two Loziers, a Pullman and a Paige. When the
license inspectors called at his place of business, the
agent in charge offered to sell each and all of these cars
at a stipulated price, and to give immediate possession
thereof. It was also shown that the place of business
bore signs indicating that it was a place where automo-
biles were kept for sale. It also had a gasoline tank,
an oil tank and a wash room for the purpose of washing
automobiles.

Defendant's president testified that the business of
the defendant was to sell cars as the agent of a foreign
corporation. Sales were made in the following way:
After a purchaser ordered a car the defendant would
send in the order to the factory. In due course of time
the factory would ship a car from the factory to the de-
fendant with a bill of lading, and the defendant would
then take the car from the freight station and deliver it
to the purchaser. This constituted the main business
of the defendant. The witness further testified that de-
fendant used a "demonstrator" in making sales, and the

sales were made on a commission basis. At the time he testified defendant was the agent for the Lozier Company, of Detroit, the Chandler Motor Company, of Ohio, and the Palmer-Singer Motor Company, of New York. Formerly the company acted as the agent of the Paige Motor Car Company, of Detroit, and of the Pullman Motor Company, of Pennsylvania. Defendant never had but two Paige cars during its agency contract with the Paige Motor Company. This contract terminated in the spring of 1913. The two Paige cars were used as demonstrators, and were not on hand at the same time. Defendant never had but one Pullman car, which was also used as a demonstrator. Its agency for the Pullman Motor Company terminated about a year before witness testified. Witness further stated that the company did not rent or hire automobiles. It did not sell tires or any materials or supplies for automobiles. It did not store cars of any kind for anyone, nor did it wash or repair cars for anyone except itself. The company began business in April, 1912. From that time up to the institution of the suit, it had sold only one automobile which it had on hand in the garage. After the institution of this suit it sold three other cars which it had on hand as demonstrators. Of the four cars thus sold, two were Paige cars, one a Pullman and one a Lozier. The Paiges and Pullman were sold because, owing to the termination of the agency contract, they were of no further use as demonstrators. Witness further testified that, with the exception of the Lozier cars, he would sell any cars on hand if given a reasonable price for them, but being demonstrators they were not for sale or advertised for sale.

Defendant insists that it is not liable for the license fee on two grounds: (1) The four isolated sales of automobiles on hand did not constitute the doing of business covered by the license ordinance; (2) the license fee in question is a tax on the occupation or business of carrying on interstate commerce and therefore unconstitutional and void.

In support of the first proposition we are cited to a number of cases holding that a single act, or even a number of isolated acts, pertaining to a particular business do not constitute the doing of or carrying on of that business within the meaning of the law imposing a license tax. Hays v. Commonwealth, 107 Ky., 655;

Evers v. City of Mayfield, 120 Ky., 73. That principle, however, is confined to cases where there is no intention on the part of such person to engage in such business. Thus, for instance, if a farmer should effect a sale of his neighbor's real estate under a special contract by which he should receive a commission for effecting the sale, this single act would not make him liable for a real estate broker's tax. So, if a merchant, in hauling goods from Louisville to Anchorage, should sell some of his goods to a single party, this would not subject him to a penalty for carrying on the business of a peddler. However, if he is actually engaged in a particular business, with the intention of carrying on that business, his liability for a license tax cannot be made to depend on the number of transactions he has, or the number of sales he makes. In the present case the defendant advertised automobiles for sale. Within little over a year's time it actually sold four automobiles which it had stored in its garage, and which were not shipped to it from other states to be delivered to purchasers on orders previously taken. Defendant's president said that he would sell any car on hand except a Lozier, and the license inspectors testified to the fact that the machines on hand were actually offered for sale. Manifestly it would require a sale of fewer automobiles than of other articles less valuable to constitute the carrying on of such business. Defendant, however, argues with great force that the demonstrators were not procured for the purpose of sale, but only to show the intending purchasers the character and qualities of the machines. The machines were not kept for sale, but were to be used as demonstrators. The sales were made because the agency contracts had terminated, and the demonstrators were no longer serviceable for the purpose for which they were procured. To a certain extent this may be true, and yet defendant's intention must be determined not merely by the statements of its president, but by its subesquent conduct. Doubtless defendant's primary purpose in purchasing the cars and in having them on hand was to use them as demonstrators, but the fact that it actually sold them justifies the conclusion that it intended to sell them if as a matter of fact they were of no use as demonstrators, and under the circumstances we cannot say that such sales did not constitute a substantial part of its regular business. On the contrary, we conclude that the evi-

dence is sufficient to show that defendant operated a public garage, in which automobiles not previously shipped by manufacturers doing business in other states, to be delivered to purchasers in response to orders theretofore taken by defendant as their agent, were kept for sale, and is therefore subject to the license tax in question.

Being of the opinion that defendant was liable for the license tax solely on account of its intrastate business, we deem it unnecessary to discuss the question whether or not defendant's business in acting as agent in selling and delivering machines for manufacturers in other states to purchasers, on orders previously taken by it, is interstate commerce and therefore not subject to the imposition of a license fee.

Judgment affirmed.