DAWSON, ATTORNEY GENERAL OF THE STATE
OF KENTUCKY, ET AL. *v.* KENTUCKY DIS-
TILLERIES & WAREHOUSE COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF KENTUCKY.

DAWSON, ATTORNEY    GENERAL   OF   THE
COMMONWEALTH OF KENTUCKY, AND IN-
DIVIDUALLY, ET AL. *v.* J. & A. FREIBERG
COMPANY, INCORPORATED.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF KENTUCKY.

Nos. 439, 582.  Argued January 6, 1921.—Decided February 28, 1921.

1. The tax sought to be imposed by a law of Kentucky of fifty cents
   a gallon upon whisky either withdrawn from bond within the State
   or transferred in bond from the State elsewhere, although described
   as an "annual license tax" on persons engaged "in the business
   of owning and storing" whisky in bonded warehouses, is not an
   occupation tax but essentially a property tax, tested by the local
   law.  P. 291.
2. Being a property tax, it is void because it fails to comply with § 171
   of the Kentucky constitution, which provides that taxes shall be
   "uniform upon all property of the same class subject to taxation";
   whisky never having been classified separately and being taxed
   under another law on its fair cash value.  P. 291.
3. To pay under protest and sue to recover is not such an adequate
   legal remedy against an illegal state tax as will prevent the federal
   courts from exercising their equitable jurisdiction to restrain enforce-
   ment if the right to recover back is uncertain under the state law
   when the injunction suit is begun.  P. 295.  § 162, Ky. Stats., con-
   sidered.
4. An equitable remedy available in the state court is not lost by
   suing in a federal court.  P. 296.
5. Under the amendment of Jud. Code, § 266, which provides that

proceedings in a federal court to restrain execution of a state statute shall in certain circumstances be stayed to await determination of a suit in a state court to enforce it accompanied by a stay of proceedings under it, the stay granted in the state court must be sufficiently general to protect the suitors in the federal court from the irreparable injury against which they there sought protection. P. 296.

274 Fed. Rep. 420, affirmed.

DIRECT appeals, under Jud. Code, § 266, from orders granting interlocutory injunctions. The facts are stated in the opinion.

*Mr. Chas. I. Dawson,* Attorney General of the Commonwealth of Kentucky, with whom *Mr. W. T. Fowler,* Assistant Attorney General of the Commonwealth of Kentucky, was on the briefs, for appellants.

*Mr. W. Overton Harris,* for Louisville Public Warehouse Company, appellant in No. 582.

*Mr. William Marshall Bullitt,* with whom *Mr. Levy Mayer* was on the brief, for appellee in No. 439.

*Mr. Thomas Kennedy Helm* and *Mr. Levi Cooke,* with whom *Mr. Edmund F. Trabue, Mr. John C. Doolan* and *Mr. James P. Helm, Jr.,* were on the brief, for appellee in No. 582.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

On March 12, 1920, the Legislature of Kentucky passed and the Governor approved an act which imposed upon every person engaged in the business of manufacturing whisky or "in the business of owning and storing" the same in bonded warehouses within the State what was called an "annual license tax" of fifty cents a gallon upon all whisky either withdrawn from bond or transferred in bond from Kentucky to a point outside that State. Acts

1920, c. 13. The act took effect, by its terms, on its approval by the Governor. At that time there were stored in such bonded warehouses about 30,000,000 gallons oi whisky worth in bond perhaps $1.50 a gallon. Much of this whisky was owned by citizens of other States, their ownership being evidenced by negotiable warehouse receipts. Shortly after the enactment of the statute two suits were brought in the District Courts of the United States for Kentucky to enjoin its enforcement. The first was brought in the Western District, by the J. & A. Freiberg Company, Incorporated, an Ohio corporation; the second in the Eastern District by the Kentucky Distilleries and Warehouse Company, a New Jersey corporation. The Attorney General of the Commonwealth and the Auditor of Public Accounts were made defendants in each. In the former the Louisville Public Warehouse Company was also a defendant; in the latter, the Commonwealth's Attorney.

In the Freiberg case it was alleged that the whisky was in a general bonded warehouse; [1] that the owner wished to withdraw it for removal in bond to a general bonded

_____
[1] Every bonded warehouseman was required to make to the State on June 1, 1920, and monthly thereafter, a report showing all the whisky in bonded storage and the number of proof gallons withdrawn or transferred. The act provided by § 3 that all bonded warehousemen "shall, at the time said reports herein provided for are made, pay to the Auditor of Public Accounts the tax of fifty cents per proof gallon upon each proof gallon of such spirits removed from the bonded warehouse . . . . or transferred under bond out of this State, up to the date of making such report; and for the purpose of securing the payment of the license taxes herein provided for, the Commonwealth shall have a lien on all such spirits stored in such bonded warehouses, together with the other property of the bonded warehousemen used in connection therewith; and in all cases where the spirits so removed or transferred were owned or controlled by another than the bonded warehouseman, then the bonded warehouseman shall collect and pay the tax due on such spirits so removed or transferred under bond, and shall be subrogated to the lien of the Commonwealth."

warehouse in Massachusetts; and that the defendant warehouseman, acting under provisions of the Kentucky statute, refused to permit such transfer unless the tax in question was paid by the owner.   In the Distilleries Company case the plaintiff alleged that it had in its distillery warehouses large quantities of whisky, most of which was owned by others, that requests were being made daily either to withdraw lots from bond upon paying the government tax or to have them transferred in bond to other States; and that the defendants threatened to enforce heavy penalties if any such withdrawal or transfer was permitted without making payment of the fifty cents a gallon state tax.   In each case a motion for an interlocutory injunction was made and heard before three judges under § 266 of the Judicial Code.   The substantial questions presented in the two suits were the same. The plaintiff contended, in each, that the Kentucky statute was void under both the state and federal constitutions; and in each case the defendants, besides asserting the validity of the act, insisted, among other things, that the suit should be dismissed for wanu of equity because there was an adequate remedy at law.   The District Courts granted plaintiffs' motions, holding that there was no adequate remedy at law and that the statute was invalid under the constitution of the State because it was a property tax, was not uniform in its operation, and was confiscatory.   The case comes here by direct appeal under § 266 of the Judicial Code.   We shall consider first the validity of the tax.

*First.*   The Attorney General concedes that the tax, if a property tax, is invalid; since it does not comply with the requirements of a property tax specified in § 171 of the state constitution.   It is not "uniform upon all property of the same class subject to taxation," [1] and though

---

[1] If the tax in question were a property tax there would be double taxation of this property and the uniformity clause would be violated,

called an "annual " tax was not intended to be such.[1] He contends, however, that the tax is, as stated in the title of the act, a license tax upon "the business of manufacturing " distilled spirits and upon "the business of owning and storing such spirits in bonded warehouses." Section 181 of the state constitution authorizes license or occupation taxes; and statutes imposing such taxes measured by the amount of the product have been repeatedly sustained by its highest court. *Raydure* v. *Board of Supervisors*, 183 Kentucky, 84; *Strater Bros. Tobacco Co.* v. *Commonwealth*, 117 Kentucky, 604. Here we are concerned only with the taxes which are alleged to be on "the business of owning and storing such spirits in bonded warehouses." The question is whether as to such this fifty cents a gallon tax is an occupation tax or is a property tax. The question is one of local law, so that a decision of it by the highest court of the State would be accepted by us as conclusive. But the validity of the statute does not appear to have been passed upon by any Kentucky court. We are, therefore, called upon, as were the District Courts, to determine this question of state law.

The name by which the tax is described in the statute, is, of course, immaterial. Its character must be determined by its incidents; and obviously it has none of the

because the whisky has never been put into a separate class; and under another statute all whisky stored in bonded warehouses was required to be assessed by the State Tax Commission at its fair cash value; and taxes at the rate of 40 cents per $100 of value were payable thereon. Ky. Stats., § 4019, as amended March 5, 1918, c. 4, Acts 1918. Compare *Campbell County* v. *City of Newport*, 174 Ky. 712, 723; *Raydure* v. *Board of Supervisors*, 183 Ky. 84, 97.

[1] It was admitted that it would be clearly void as being confiscatory unless it was assumed that it was to be levied only once—namely when the whisky is withdrawn from bond or when it is transferred in bond to another State. Compare *Sallsbury* v. *Equitable Purchasing Co.*, 177 Ky. 348, 351, 353.

ordinary incidents of an occupation tax.  Unlike the tax of one and one-fourth cents a gallon upon rectifiers sustained in *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, and the tax of two cents a gallon upon distillers and warehousemen sustained in *Greene* v. *Taylor, Jr. & Sons,* 184 Kentucky, 739, this tax is not upon the business or occupation of the warehouseman.  A particular lot of whisky may pass through a dozen bonded warehouses without one of them being obliged to pay the tax.  For the only warehouseman required to do so, is he who has the whisky on storage at the time of its removal from bond (Government) tax paid or when it is transferred in bond to another State.  The tax is made primarily payable by the warehouseman and to secure its payment the State is given a lien upon the warehouse and the whisky therein. But the warehouseman is a collection agency merely empowered to get reimbursement through subrogation to the State's lien on the whisky of others which ultimately bears the burden of the tax.  Nor is the alleged business of merely owning and storing whisky in bond made taxable.  So long as the whisky is stored in bond within the State it is free of the tax.  One may own and store the whisky for years in the hope of selling it at a profit, and yet be free from any obligation ever to pay this tax, if, before its removal from bond within the State, the whisky is sold to another or if, while so owned, it is destroyed or forfeited to the Government.  Likewise the tax is not one imposed upon the business of owning, storing and removing whisky from bond.  For the tax would become payable on account of whisky removed, although there had not been storage for any appreciable time; thus the tax would be payable on whisky if it had been removed from the warehouse immediately after the approval of the act. Nor is the tax one on the business of removing liquor owned.  For the tax is payable in respect to any lot of whisky removed; and a single transaction does not con-

stitute engaging in the business, be it that of buying and selling whisky or in the business of otherwise using it.[1] In fact the tax is one imposed upon each lot of whisky at the time it is removed from bond within the State. The tax might be said to be upon the act of removal from the bonded warehouse within the State. But as stated by the lower court, "the thing really taxed is the act of the owner in taking his property out of storage into his own possession (absolute or qualified) for the purpose of making some one of the only uses of which it is capable, *i. e.*, consumption, sale or keeping for future consumption or sale. . . . The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value." To levy a tax by reason of ownership of property is to tax the property. Compare *Thompson* v. *Kreutzer*, 112 Mississippi, 165; *Thompson* v. *McLeod*, 112 Mississippi, 383. It can not be made an occupation or license tax by calling it so. See *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 148–150; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28. The language of the emergency clause in the act discloses that the Legislature considered that it was, in fact, taxing the whisky.[2]

As we hold the tax to be one on property and it is conceded that, if it be such, it is invalid under the state constitution, we have no occasion to consider whether

---

[1] That an isolated transaction would not under the law of Kentucky constitute engaging in a business; see *Hays* v. *Commonwealth*, 107 Ky. 655, 658; *Evers* v. *City of Mayfield*, 120 Ky. 73, 77; *Louisville Lozier Co.* v. *City of Louisville*, 159 Ky. 178, 180.

[2] "And whereas, the liquor which they are handling and in which they are dealing is constantly in large quantities being removed from the bonded warehouses and disposed of, without the State securing an adequate license tax thereon, an emergency is hereby declared to exist."

it would be also invalid under the state constitution as a license or excise tax, because confiscatory; compare *Owen County* v. *F. & A. Cox Co.*, 132 Kentucky, 738, 743; *City of Louisville* v. *Pooley*, 136 Kentucky, 286; *Sallsbury* v. *Equitable Purchasing Co.*, 177 Kentucky, 348, 351, 354; or for other reasons. Nor need we consider whether it is not also obnoxious to the Federal Constitution as imposing a burden upon interstate commerce. Compare *Heyman* v. *Hays*, 236 U. S. 178.

*Second.* The Attorney General insists that these bills in equity should have been dismissed because each plaintiff had a plain, adequate and complete remedy at law. The contention rests upon § 162 of the Kentucky Statutes, which declares that: "When it shall appear to the Auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid, in behalf of the person who paid the same."

*Greene* v. *Taylor, Jr. & Sons*, 184 Kentucky, 739, is cited to show that if the Auditor fails in this duty, a writ of mandamus will issue to compel performance. The plaintiffs, it is said, should have paid the tax under protest and have sued at law to recover the amounts so paid. But when these suits were brought (April and May, 1920) the decisions of the highest court of the State left it at least doubtful whether money so paid could have been recovered at law by the taxpayer, among other reasons, because the money would not have been paid under compulsion of distraint or of a right of distraint or under a mistake of law or of fact.[1] It was not until November 16, 1920, which was after these appeals had been entered in

---

[1] Compare *Louisville City National Bank* v. *Coulter*, 112 Ky. 577, 584; *Couty* v. *Bosworth*, 160 Ky. 312; *Louisville Gas Co.* v. *Bosworth*, 169 Ky. 824; and the first opinion in *Craig* v. *Security Producing & Refining Co.*, rendered March 9, 1920.

this court, that *Craig* v. *Security Producing & Refining Co.*, 189 Kentucky, 565, 568, settled that money paid under such circumstances could be recovered. The Court of Appeals of Kentucky recognized the doubt arising from its earlier decisions and in order to remove the doubt found it necessary to overrule several of its recent opinions, "so far as they conflict with the construction herein given section 162."

It is well settled that "if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit." *Davis* v. *Wakelee*, 156 U. S. 680, 688. But whatever remedies § 162 is now regarded as conferring, it is clear that at the time this suit was brought they were not regarded in Kentucky as sufficiently adequate to oust the jurisdiction of equity to enjoin the illegal collection of taxes. *Gates* v. *Barrett*, 79 Kentucky, 295; *Norman* v. *Boaz*, 85 Kentucky, 557, 560; *Negley* v. *Henderson Bridge Co.*, 107 Kentucky, 414; *Louisville Trust Co.* v. *Stone*, 107 Fed. Rep. 305, 309. And if the equitable remedy was available in the state courts it was not lost by suing in the federal court. *Davis* v. *Gray*, 16 Wall. 203, 221; *Cowley* v. *Northern Pacific R. R. Co.*, 159 U. S. 569. Nor is the equitable jurisdiction lost because since the filing of the bill an adequate legal remedy may have become available. *Beedle* v. *Bennett*, 122 U. S. 71; *Busch* v. *Jones*, 184 U. S. 598. We have no occasion, therefore, to consider other reasons urged why the legal remedy, if any, would have been inadequate.

*Third.* The Attorney General moved that these suits be abated relying upon the amendment to § 266 of the Judicial Code by Act of March 4, 1913, c. 160, 37 Stat. 1013, which declares that if before the final hearing of an application to restrain the enforcement of a statute or an order made by an administrative board or commission, "a suit shall have been brought in a court of the State having jurisdiction thereof under the laws of such State,

to enforce such statute or order, accompanied by a stay in such State court of proceedings under such statute or order pending the determination of such suit by such State court, all proceedings in any court of the United States to restrain the execution of such statute or order shall be stayed pending the final determination of such suit in the courts of the State."

The suit pending in the state court was this: A liquor dealer who owned whisky in a distillery warehouse had, prior to the enactment of the statute here in question, caused it to be bottled in bond and had paid thereon the two-cent a gallon state tax imposed under the law of 1917. He claimed the right to withdraw the whisky from bond without payment of the fifty cents a gallon tax; and brought suit in a county court to enjoin the warehouseman from preventing his doing so. The latter set up this 1920 Act. Thereupon the plaintiff, by amended petition, joined the Attorney General and the Auditor as codefendants and prayed that they be enjoined from compelling the plaintiff or the warehouseman to pay the fifty-cents a gallon tax on the plaintiff's whisky. A restraining order to that effect issued.

Whether this suit in the county court was of such a character as to entitle the state officials to stay the proceedings in the federal court we do not decide. Strictly speaking it was not "brought . . . to enforce " the statute in question; but it is, at least, arguable that it might have been accepted by the state officials as a means to that end, and so have fulfilled in substance the statutory requirement. See House Report No. 1584, 62nd Cong. 3rd sess. But whether this is true or not, it was not "accompanied by a stay in such State court of proceedings under such statute," within the meaning of the Judicial Code. The stay contemplated by Congress is a general one, which would protect, among others, those who had already sought protection in the federal court. The re-

straining order [1] issued in the purely private litigation between third parties in the county court left the plaintiffs in the suits before us subject to all the danger of irreparable injury against which they had sought protection in the federal courts.

*Affirmed.*

---

[1] "You are hereby enjoined from requiring from the plaintiff or his agents or distiller in charge, payment of the fifty-cent per gallon license tax on his whiskies described in the petition . . . until the further orders of the court."