**McNEIR v. ANDERSON, Internal Revenue Collector.**

(District Court, S. D. New York. February 15, 1926.)

Internal revenue ⬤⟾2—Gift tax held a direct tax, invalid for want of apportionment (Revenue Act June 2, 1924, § 319 [Comp. St. Supp. 1925, § 6336⅘s]; Const. art. 1, § 2, cl. 3).

Tax imposed by Revenue Act June 2, 1924, § 319 (Comp. St. Supp. 1925, § 6336⅘s), on gifts inter vivos, unconnected with conduct of any business, *held* a direct tax, invalid under Const. art. 1, § 2, cl. 3, for want of apportionment.

At Law. Action by George McNeir against Charles W. Anderson, Collector of Internal Revenue. On defendant's motion to dismiss. Motion denied.

On the 8th day of January, 1924, the plaintiff, George McNeir, hereinafter called the donor, executed a deed of trust to the Farmers' Loan & Trust Company, providing that they should hold certain securities in trust to divide the same into three equal parts, and to collect and to receive the income thereof, and to apply the same, one part to the use of the donor's wife during the term of her natural life, another part to the use of Burrows McNeir, a son of the donor, during the term of his natural life, and the third part to the use of Thomas Shephard McNeir, a son of the donor, during the term of his natural life. There were further trusts created for the grandchildren of the donor, and, if the wife and the sons of the donor should die before him, leaving no issue, the trust deed provided for the payment over of the principal to the donor, if then living, and, if not then living, one half to Georgetown University, and the other half to those persons who would be entitled to receive the same if the donor had died possessed of the personal property, a resident of the state of New York and intestate. The securities embraced in the deed of trust were of the value of $806,400, and were transferred to the trustee on January 8, 1924.

On December 15, 16, and 22, 1924, the donor made certain other gifts to his children, Burrows and Thomas Shephard McNeir, and to one William McNeir, of the value altogether of $4,300. On January 22, 1925, he executed a return for federal gift tax and paid under protest a gift tax, as assessed, amounting to $47,284. A refunding claim was rejected, and thereafter this action to recover the tax was brought in this court February 7, 1925. The defendant thereafter moved to dismiss the complaint, which set

forth the above facts, upon the ground that it did not contain facts sufficient to constitute a cause of action.

Emory R. Buckner, U. S. Atty., of New York City (A. W. Gregg, Solicitor of Internal Revenue, and Charles T. Hendler, Sp. Atty. Internal Revenue, both of Washington, D. C., and F. C. Bellinger, Asst. U. S. Atty., of New York City, of counsel), for the motion.

Geller, Rolston & Blanc, of New York City (Frederick Geller, Russell L. Bradford, and Liston C. Bertram, all of New York City, of counsel), opposed.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). The gift tax was imposed under section 319 of the Revenue Act of 1924 (Comp. St. Supp. 1925, § 6336⅘s), which provides that:

"For the calendar year 1924, and each calendar year thereafter, a tax equal to the sum of the following is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly, and upon the transfer by a nonresident by gift during such calendar year of any property situated within the United States, whether made directly or indirectly. * * *"

I shall not discuss whether the gift tax is unconstitutional or inapplicable, because applied retroactively, or because not uniform throughout the United States, or because the classification is unreasonable. If the tax be held a direct tax, which must be apportioned among the several states, as I believe it must be, it will be unnecessary to consider the other objections which the plaintiff has raised.

There is, I believe, no case where such a tax as the one now under consideration has been regarded as a tax upon an excise or privilege. Moreover, so far as I can discover, it is a form of taxation new both in America and Europe. Testamentary gifts and gifts in contemplation of death have been, both in England and in the United States, treated as excises, and subjected to taxation upon that theory. If there is anything left of the general views of the court in Pollack v. Farmers' Loan & Trust Co., 15 S. Ct. 912, 158 U. S. 601, 39 L. Ed. 1108, as to the nature of so-called direct taxes, the tax upon a gift not made in contemplation of death, and not to take effect upon death, would seem to be necessarily a direct tax imposed upon the donor purely as the owner of property.

Billings v. United States, 34 S. Ct. 421, 232 U. S. 261, 58 L. Ed. 596, is not in point, for the use of a yacht for pleasure was not only distinguished by the Supreme Court in the opinion of the Chief Justice from the sum total of the rights of disposition and ownership of the yacht, but it may perhaps also be said that many rights in ships have historically been treated as excisable. The laws for registry, clearance, and all kinds of regulative provisions appear to place such property peculiarly within governmental control and regulation, so that the subjection of the use of it to an excise tax cannot be regarded as extraordinary.

The case of Patton v. Brady, 22 S. Ct. 493, 184 U. S. 608, 46 L. Ed. 713, is also not in point. There a tax was imposed upon tobacco manufactured for consumption, at a period intermediate the commencement of manufacture and the final consumption of the article. Such a tax had been applied to tobacco in England prior to the adoption of the Constitution, and was held by the Supreme Court to have come within the definition of an excise tax.

The government cites the language of Mr. Justice Lamar in Keeney v. New York, 32 S. Ct. 105, 222 U. S. 525, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139, where a statute of New York providing for a transfer tax upon property passing by deed of a resident, and intended to take effect in possession or enjoyment at or after the death of the grantor, is discussed. In that case the testatrix, Mrs. Keeney, four years before her death, had conveyed certain property to trustees, in trust to divide the net income between herself and her three children during the term of her life, and upon her death to transfer the principal to her children, or their issue. The argument was made that the case was different from one where property was transferred in contemplation of death, because there was no such contemplation, that a gift made inter vivos, to take effect upon death, was not within the transfers which could be taxed by the state as a privilege, and that the tax, therefore, was subject to the ordinary limitations of a property tax. Mr. Justice Lamar, in upholding the tax, said:

"But, if any such distinction could be made between taxing a right and taxing a privilege, it would not avail plaintiffs in the present case. There is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees and

devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance, and transfers by deed to take effect at death, have frequently been classed with death duties, legacy and inheritance taxes. Some statutes go further than that of New York, and tax gratuitous acquisitions under marriage settlements, trust conveyances, or other instruments where the transfer of property takes effect upon the death, not merely of the grantor, but of any person whomsoever."

He went on to say that the Internal Revenue Act of 1864 "imposed a succession tax on 'all dispositions of real estate, taking effect upon the death of any person,'" and cited the case of Scholey v. Rew, 23 Wall. 331, at page 347, 23 L. Ed. 99. This remark about the effect of the Internal Revenue Act of 1864 (13 Stat. 287), and the suggestion that it extended to transfers inter vivos, to take effect on the death of persons other than the grantor, was made in arguendo, and was unnecessary to the disposition of the Keeney Case.

Certainly the case of Scholey v. Rew, supra, involved no such interpretation, but, whether or not such can be regarded as the proper construction of the Internal Revenue Act of 1864, there may well be a difference in classification between a tax upon a transfer of property upon the death of a person, whether he be the grantor or a third person, and the taxing of a gift inter vivos at a time when it is entirely unconnected with any devolution of property by death.

The question involved in the present case does not resemble that considered in the Keeney Case, for there the tax was upon the transfer of an estate at the time of the death of the settlor, which had been held in trust for her life use. Here it is imposed upon a transfer inter vivos, and not upon a transfer at the time of the death of any one.

The tax under consideration seems to have no more warrant than that before the Supreme Court in the recent case of Dawson v. Kentucky Distilleries, 41 S. Ct. 272, 255 U. S. 288, 65 L. Ed. 638. There the tax was described as a license tax of persons engaged in the business of owning and storing whisky in bonded warehouses. The Supreme Court,

however, held that the tax was really one on the right to take possession and remove whisky from a bonded warehouse, and was a direct tax upon property and not upon an occupation or license. Mr. Justice Brandeis said in the opinion: "To levy a tax by reason of ownership of property is to tax the property. * * * It cannot be made an occupation or license tax by calling it so."

In New York Trust Co. v. Eisner, 41 S. Ct. 507, 256 U. S. at page 349, 65 L. Ed. 963, 16 A. L. R. 660, Mr. Justice Holmes mentioned the argument that the federal estate tax, if treated as levied upon the transfer of the decedent's estate on his death, would be direct, and therefore void, for want of apportionment, and said: "But that matter * * * is disposed of by Knowlton v. Moore, not by an attempt to make some scientific distinction, which would be at least difficult, but on an interpretation of language by its traditional use—on the practical and historical ground that this kind of tax always has been regarded as the antithesis of a direct tax; 'has ever been treated as a duty or excise, because of the particular occasion which gives rise to its levy.' [20 S. Ct. 747] 178 U. S. 81–83 [44 L. Ed. 969.] Upon this point a page of history is worth a volume of logic."

The fact is that there is no "page of history," or even line of history, where such a tax as this has been ever foreshadowed, and if the reasoning of Pollock v. Farmers' Loan & Trust Co., supra, is to stand, I cannot see how this tax can be defended, which would not seem to be an excise or license tax for the privilege of doing something, but a tax upon a necessary incident of the ownership of property, which has not been apportioned, and is therefore forbidden by article 1, section 2, clause 3, of the federal Constitution. The classification of subjects of taxation is not scientific, but largely historical, and a tax upon an ordinary transfer of personal property inter vivos, unconnected with the conduct of any business, would seem to be a direct tax, if anything can be, under judicial definitions. See Pollock v. Farmers' Loan & Trust Co., supra, Nicol v. Ames, 19 S. Ct. 522, 173 U. S. 509, 43 L. Ed. 786, and Dawson v. Kentucky Distilleries, supra.

The motion by the collector to dismiss the complaint is accordingly denied.