THOMPSON, J.
The plaintiff is an Ohio corporation and is engaged in the manufacture and sale of “Malt Syrup,” a food product used by bakeries and householders in making bread and bread products.
The syrup may also be used in brewing intoxicating beverages by the simple addition of a hop flavor.
The plaintiff’s principal establishments or places of business are in Cincinnati, Ohio, and Pekin, Ill., but it also has a branch in the city' of New Orleans in charge of a local agent or manager.
The syrup is, shipped to New Orleans in barrels, kegs, and 50-pound cans, where it is *550 placed in a warehouse and kept until sold and distributed to' the plaintiff’s patrons and customers, who are principally bakers. There are no sales and deliveries made by plaintiff in Louisiana except from the stock kept in the warehouse in this city.
It is claimed that the plaintiff has been engaged in this business in Louisiana for more than 25 years, selling its syrup to the bakers exclusively; that sales per year in Louisiana approximate 650,000 pounds at ah average price of 7 cents per pound.
At its extra session in December, 1928, the Legislature passed Act No. 4, approved December 18, 1928, which requires the payment of 10 cents per pound of 16 ounces or fraction thereof upon all malt extract, derivatives, or combinations thereof intended for brewing or cooking that is handled, sold, or distributed in the state for domestic consumption.
On the second day after the act became effective, the plaintiff applied to the court for an injunction to restrain the collection of the tax sought to be imposed. A rule nisi coupled with a restraining order was issued, but after a hearing the restraining order was dissolved and the preliminary injunction denied.
From that judgment the plaintiff has appealed.
It appears to be conceded that the act embraces but one object, and that object is sufficiently indicated in the title; at least, there is no objection as to the legal form of the enactment.
The statute is assailed upon three grounds : (1) That the tax attempted to be imposed is a property tax and exceeds the constitutional limit of 5Vi mills on the dollar of assessed or assessable property; (2) that if the tax is held to be not a property tax, but a tax within the meaning of section 8, art. 10, of the Constitution (license tax), then said tax is unjust, unreasonable, discriminative, confiscatory, and oppressive, and that it amounts to an immediate and absolute prohibition and suppression of petitioner and its customers engaging in the legitimate and lawful business and occupation of possessing, using, storing, selling, and disposing of such malt syrup, and thereby deprives it and its customers of its and their liberty and property without due process of law; (3) that in view of the fact that all malt syrup so used in the state is imported by the plaintiff from outside the state in interstate commerce, the said act of the Legislature is designed to impose a burdensome and confiscatory tax upon petitioner’s interstate commerce business in violation of the Constitution of the United States.
Section 1 of the Act declares:
“That there is hereby levied a tax on all malt extract, derivatives or combinations thereof intended for brewing or cooking” purposes “that is handled, sold or distributed in the state of Louisiana for domestic consumption, which tax shall be ten cents on each pound of sixteen ounces, or fraction of a pound.”
“Section two, The aforesaid tax * * * shall be collectible from all persons, firms, partnerships, corporations or associations of persons, engaged as dealers in the handling, sale or distribution of malt extract,” etc.
The term “dealer,” as used in this act, is defined to mean any person, firm, partnership, etc., who produces, refines, manufactures, or compounds malt extract for sale to the jobber, retailer, or consumer, or to the persons, firms, etc., who in turn sell to the jobber, retailer, or consumer.
The term “dealer” is further defined to mean the person, firm, etc., who imports such malt extract, etc., from any other state or foreign country, for distribution, sale, or use in the state. On all malt extract, etc., imported from other states or foreign countries *552 and used by him, the dealer, as thus defined, shall pay the tax on the amount so imported and used as if it had been sold for domestic consumption.
The term “dealer” is further defined to mean any person, firm, etc., who, whether at wholesale or retail, sells, distributes, disposes of, or gives away for advertising or other purposes malt extract, etc., which may be used or consumed, or is intended for the use or consumption within the state.
The other sections of the act are remedial and relate to the method of collecting the tax, the fixing of stamps and penalties for violating the act, and hence have no material bearing on, or pertinency to, the issue involved.
It must be admitted that the act under consideration is not entirely free from ambiguity, and it may be said of it that it bears intrinsic evidence of the failure to observe that degree of care and deliberation in its preparation which lamentably so frequently occurs in drawing acts.of such manifest importance and concern.
Adhering, however, to the well-recognized principle that the character of a taxing statute must be determined by its various incidents and attributes rather than from the particular name given to it, and observing the equally well-settled rule that an act of a legislative body is presumed to be constitutional and will not be considered otherwise unless clearly so, the court has reached the conclusion that the act under consideration, which bases the amount of the tax on the quantity rather than upon value, is not a tax upon the property itself nor upon the ■ ownership thereof.
It is quite true that there are some words and phrases used in the text of the act when considered separately and independently would seem to indicate that the tax was intended to be levied upon the property itself or upon the ownership or possession of the property, but that idea is dispelled almost completely when the act is analyzed and considered as a whole.
For instance, in the first section of the act it is declared that there is hereby levied a tax on all malt extract, etc., intended for brewing or cooking, which if considered alone might very well be taken to mean that the levy was upon the malt itself. What follows, however, shows very clearly that the tax is levied upon those who handle, sell, or distribute the malt.
The malt must be handled before it can be sold, and when sold it must be delivered and distributed to the purchasers. There is no basis for the contention that the mere act of possessing or of handling or of storing the malt in this state would subject the same to the tax. It is the handling for sale, the selling, and the distributing that creates the liability for the tax, and it must be collected from those who handle, sell, and distribute the malt.
This construction is very clearly borne out in the second section of the act, which declares that the tax of 10 cents a pound shall be collected, not from the owner of the malt extract, etc., not from the mere possessor, but from all persons, firms, etc., engaged as dealers in the handling, sale, or distribution.
And the “dealer” is defined to mean any person, firm, etc., who produces, refines, manufactures, or compounds malt extract for sale to the jobber, retailer, or consumer, or to persons who, in turn, sell to the jobber, retailer, or consumer.
The term “dealer” is further defined to mean the person, firm, etc., who imports such malt extract, etc., from any other state or foreign country for distribution, sale, or use in this state, and the dealer so defined shall *554 pay the tax on the amount so imported and used.
The term “dealer” is further defined to mean any person, firm, etc., who sells, distributes, disposes of, or gives away for advertising, malt extract, etc., which may be used or consumed or is intended for use or consumption within the state.
In this connection, it may be stated that section 3 of the act requires the stamps therein authorized to be affixed by the dealer on the smallest containers or packages that will be handled, sold, or distributed to consumers.
The whole body of the statute and the numerous definitions of the word “dealer” show very decidedly and conclusively that it is upon those who are engaged in the business of selling that the tax is imposed, and not upon the ownership or mere possession for use.
There is nothing in the statute which would justify even a remote inference that the use or handling of malt extract by any person other than a dealer as defined would subject such a user to the payment of the tax.
The enactment under consideration is quite similar in all material aspects to the tobacco tax statute we had under consideration in the case of Lionel’s Cigar Store v. McFarland, 162 La. 959, 111 So. 341. The first section of that act declares that there is hereby levied a tax upon tobacco and tobacco products for the benefit of the public schools of the state, which tax shall be paid by and collected from every person, firm, etc., engaged in selling any and all kinds of tobacco, etc.
In the statute under consideration the first section provides there is hereby levied a tax on all malt extracts, etc., intended for brewing or cooking that is handled, sold, or distributed in Louisiana, and in the second section the tax is collectible as was the tobacco tax from all persons, firms, etc., engaged as dealers in the handling, sale, or distribution of malt extract, etc.
In the tobacco tax ease the s'ame contention was made as is here made, that the tax was a, property tax and exceeded the constitutional limitation.
The court held that it was not a property, tax:
“Therefore the language of the section levying the tax, taken altogether, leaves no doubt that the tax is levied, not on the right of ownership, but on the right to sell at retail.
“Being collectible only from persons, firms, corporations and associations of persons engaged in selling tobacco and tobacco products at retail, the tax is an excise or license tax' on the privilege of selling tobacco * * * at retail, and not * * • on the tobacco and tobacco products themselves, or on the right to own them.”
In the tobacco case the court further stated that what characterizes the tax as a license tax, and not a property tax, is that it is collectible only from those who are engaged in the business of selling tobacco.
And the court further observed that the incident or feature that makes the tax a license tax and not a property tax is that it is not levied on or collectible from the owner of the property, unless he is engaged in the business of selling it at retail.
All that was said along this line in the tobacco case is particularly appropriate in the, instant case.
To hold that the malt tax is a property tax and not a license tax would be in direct conflict with the ruling in the tobacco tax case.
The eases relied on by the plaintiff herein were cited in the tobacco tax case to show, that the tax was a property tax, but the court in referring to those cases said:
*556 “The nature or character of the tax in that respect is easily distinguished from the turpentine tax that was adjudged a property tax and not a privilege tax in Thompson, Auditor of Public Accounts, v. McLeod, 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, and from the whisky tax that was adjudged a property tax and not an occupation tax in Dawson, Attorney General, v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638.”
A mere reading of the turpentine case leaves no doubt but that it was not a license tax upon the sale of turpentine but a tax upon the extracting of the turpentine from the trees by the owner.
The court in that case said that:
“This act strikes down the inherent right of the property owner to lay hand upon his own property. Every owner of a pine tree enjoys the same natural right to extract gum from the tree as the owner of a vineyard has to pluck his own grapes.”
And in the Kentucky whisky case a tax of 50 cents a gallon was levied upon all whisky either withdrawn from bond or transferred in bond from Kentucky to a point outside the state.
The court very properly ruled that the thing really taxed was the act of the owner in taking his property out of storage into his own possession. The court said:
“ ‘The whole value of the whisky depends upon the owner’s right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the .value’ — to levy a tax by reason of ownership.”
There is not an incident nor an attribute in either of the cases which could be said to characterize the tax as anything but a tax on the right of the.owner in the one case to cup his trees, for turpentine and the right of the owner in the other case to take his whisky out of bond.
There may be some specific provisions in the statute which we are considering which are obnoxious to the federal Constitution, but if there be such the plaintiff has no concern as to whether such provisions are constitutional or not.
In other words, the plaintiff is not interested in whether the tax is unconstitutional with respect to some other classes who may or may not come within any of the terms defining a dealer.
The plaintiff is admittedly a dealer in a malt product in Louisiana.
It brings such product into the state, takes orders, and sells and delivers from the supply on hand in the state. If therefore the tax is not a tax on property, but is a license or an excise tax on the right to sell the product in the state, which we hold it to be, then the plaintiff comes clearly within the terms of the statute and is subject to the license.
The second contention is that the tax is unjust and unreasonable, oppressive, discriminative, and confiscatory.
The tax is levied upon all persons, firms, 'etc., who are dealers in malt extracts, etc. The act makes no exception and establishes no special class. All dealers are subject to the tax. There is therefore no discrimination. Nor do we think the tax is oppressive or confiscatory.
The tax is of that class which can be, and usually is, passed by the dealer to the consumer.
The dealer therefore suffers no loss of profits when he adds 10 cents on the pound to his selling price. Nor can it be properly said that the bakeries will suffer any very material loss in profits.
It is shown by the evidence that from 1 to 2y2 pounds of the syrup is used to make 300 *558 loaves of bread. If we take the highest estimate, say 2% pounds of the syrup to 300 loaves of bread, the additional cost per loaf by reason of the tax would amount to only one-twelfth of 1 per cent.
The tax cannot therefore be said to be unjust, unreasonable, oppressive, or confiscatory with respect either to the dealer or to the baker or user.
It is to be observed that the plaintiff confines his business to sales to bakeries, however the evidence shows that the plaintiff’s syrup can be used in making beverages of an alcoholic nature by the addition of a small per cent, of hop coloring.
The evidence shows also that less than $100,000 worth of malt product is used per year in this state for bread making, whereas $4,000,000 or $5,000,000 worth is used for brewing and other purposes.
It is a further fact, as shown by the evidence, that up to January 15, 1029 (the act went into effect on the 8th of January), the total collections from users for baking purposes amounted to $1,088.40, and the total collection from users or dealers for beverage purposes amounted to $3S,074.50.
These facts serve to show that the particular trade of the plaintiff and the special class with whom it deals forms a very small part of the trade in malt products and constitutes a very limited number of users of such products in this state.
It is a significant fact, which we have a right to take notice of, that in a case submitted along with this case the plaintiff is a dealer also in a malt extract which is sold for both brewing and cooking purposes, and that plaintiff does not complain that the tax is either oppressive or confiscatory.
In this situation, and under such circumstances, the court would not be justified in holding a tax to be unreasonable or oppres-' sive when applied to a dealer who selects as his customers a very limited number of persons who use a special malt syrup and for a particular purpose, when it is patent that the tax is not unreasonable or oppressive to practically 99 per cent, of the people who make use of the malt for beverage and other purposes.
The third contention of plaintiff is that in view of the fact all malt syrup sold in the state is imported by the plaintiff from outside of the state, in interstate commerce, the said statute is designed to impose a burdensome and confiscatory tax upon plaintiff’s interstate commerce in violation of the Constitution of the United States.
We have already shown that the plaintiff has its business establishment in the city of New Orleans and from that place it sells its syrup to its customers in Louisiana. When therefore the syrup reaches its destination in this state, it becomes a part of the general mass of property of the state and ceases to be governed by the laws applicable to interstate commerce. As all other property permanently located in the state, it becomes liable to all the laws of the state relating to taxation whether the tax be a property or a license tax.
“The Constitution of the United States does not confer on Congress any power of regulation or direct control over the internal commerce or domestic trade of the states. The state has power to impose a license tax on all trade or business carried on within its borders, whether by its own citizens or those of other states, provided only that there is no unjust discrimination against one because of his non-residence in the state.” R. C. L. vol. 17, p. 493.
This rule has been so often repeated by the Supreme Court of the United States that it would be useless here to refer to the cases.
*560 For the reasons assigned the judgment appealed from is affirmed.