### DIME TRUST & SAFE DEPOSIT CO. v. PHILLIPS, Collector of Internal Revenue.

District Court, M. D. Pennsylvania. February 2, 1929.

No. 2080.

Charles C. Lark, of Shamokin, Pa., for plaintiff.

Andrew B. Dunsmore, of Wellsboro, Pa., for defendant.

JOHNSON, District Judge. This is an action of assumpsit, brought by the Dime Trust & Safe Deposit Company, plaintiff, against David W. Phillips, collector of internal revenue, Twelfth district, defendant, to recover the sum of $18,915.12, which was paid to the collector of internal revenue, under protest, on September 10, 1926, with interest from September 10, 1926.

The facts in this case have been agreed upon in a case stated, which has been submitted to the court for trial and decision without a jury. The case stated and the facts agreed upon are as follows:

"And now, to wit, May 9, 1928, it is agreed between counsel for the plaintiff and counsel for the defendant that the following are the facts in the above-stated case, the parties hereto reserving the right, however, to introduce into evidence such further

facts, not inconsistent herewith, as they may deem advisable:

"(1) William B. Lewis was, at and before the time of his death, a resident and citizen of the state of Pennsylvania, and resided and was domiciled in the township of Shamokin, county of Northumberland, and state of Pennsylvania.

"(2) By his last will and testament, bearing date of August 8, 1925, since his death duly probated and remaining on file in the office of the register of wills of Northumberland county, Pennsylvania, recorded in the office of said register in Will Book 19, page 472, William B. Lewis appointed the Dime Trust & Safe Deposit Company to be the executor thereof.

"(3) William B. Lewis died testate at Shamokin township, Northumberland county, Pennsylvania, on September 25, 1925.

"(4) After the death of William B. Lewis, and the probate of his will, Dime Trust & Safe Deposit Company duly qualified as the executor of said last will and testament; letters testamentary on the estate of said decedent have been granted to Dime Trust & Safe Deposit Company, and it is now acting as such executor.

"(5) On or about August 5, 1926, Dime Trust & Safe Deposit Company, the executor of the last will and testament of William B. Lewis, deceased, filed with the defendant, David W. Phillips, collector of internal revenue, Twelfth collection district, at Scranton, Pa., its 'Return for Federal Estate Tax' in duplicate.

"(6) The return of property included in Schedule D–1, 'Jointly Owned Property,' was made by the plaintiff under protest.

"(7) The return of jointly owned property included in Schedule D–1 is as set out in the ninth paragraph of the plaintiff's statement of claim.

"(8) (a) Items 1, 2, 3, 6, 7, 8, and 9, mentioned in paragraph 9 of plaintiff's statement of claim, were acquired by William B. Lewis and Anna Laura Lewis, his wife, prior to the passage of the Revenue Act of 1924, of June 2, 1924.

"(b) Item 4, consisting of preferred stock in William F. Taubel, Inc., while dated September 18, 1924, was acquired by William B. Lewis and Anna Laura Lewis, his wife, on September 10, 1921; the certificate dated September 18, 1924, having been issued in place of similar certificates of stock in the same corporation by reason of a change of name of the corporation, the former certificate having been issued on September 10, 1921.

"(c) Item 5 of paragraph 9, consisting of twenty $1,000 Roaring Creek Water Company mortgage bonds, due 1959, were acquired September 6, 1924. They were purchased out of funds of William B. Lewis or Anna Laura Lewis on deposit in Dime Trust & Safe Deposit Company.

"(d) Item No. 11, consisting of savings account No. 3322 in Dime Trust & Safe Deposit Company, standing in the name of William B. Lewis or Anna L. Lewis at the time of Mr. Lewis' death, showed a balance of $47,962.80, and the accrued interest thereon was $812.33. This savings account was opened in 1910, in the name of William B. Lewis or Anna Laura Lewis.

"(e) Item No. 12 of said paragraph 9 of plaintiff's statement of claim, consisting of a checking account standing in the name of William B. Lewis or Anna Laura Lewis, in Dime Trust & Safe Deposit Company at the time of Mr. Lewis' death showed a balance of $1,566.66. This account was opened in the name of William B. or Anna Laura Lewis in 1910.

"(f) The household furniture mentioned in item 13 of paragraph 9 of the plaintiff's statement of claim, the value of which was finally determined by the Commissioner at $2,075, was purchased with funds of William B. Lewis and Anna Laura Lewis, about 1920, from the savings account in Dime Trust & Safe Deposit Company.

"(g) Item 10, mentioned in the ninth paragraph of plaintiff's statement of claim, the same being a note in the sum of $10,000, dated May 4, 1925, was taken by William B. Lewis and Anna Laura Lewis for funds loaned out of their savings account in Dime Trust & Safe Deposit Company, accumulated prior to June 2, 1924.

"(9) The value for assessment purposes, as finally determined by the Commissioner, of the items mentioned in paragraph 9 of the plaintiff's statement of claim, was $596,086.28.

"(10) William B. Lewis and Anna Laura Lewis were married in 1886, and the marriage relation continued until the date of the death of William B. Lewis on September 25, 1925.

"(11) At the time and times of the vesting of the title to each, every, and all of the several items of property of William B. Lewis and Anna Laura Lewis, enumerated and set forth in paragraph 9 of the statement of claim, William B. Lewis and Anna Laura Lewis were husband and wife.

"(12) The title to each, every, and all of the items of real and personal property set

forth and enumerated in paragraph 9 of the statement of claim, excepting the furniture, stood in the names of William B. Lewis and Anna Laura Lewis from the date of the inception of the title of the various items of property until the date of his death.

"(13) The tax assessed by the Commissioner, and paid to the collector, on the jointly owned property as enumerated in paragraph 9 of the plaintiff's statement of claim, was $18,915.12, which was paid to the collector on September 10, 1926, under protest.

"(14) The copy of the receipt of the collector to the plaintiff, attached to plaintiff's statement of claim, marked 'Exhibit A,' is a true and correct copy of the receipt given by the collector to the plaintiff for said tax.

"(15) On September 10, 1926, in accordance with the act of Congress, and the regulations of the Secretary of the Treasury established in pursuance thereof, the plaintiff filed with the collector a claim for refund of the taxes so assessed and collected, to wit, for the sum of $18,915.12, a true and correct copy of said claim being attached to the statement of claim and marked 'Exhibit B.' The claim for refund was, in due course, forwarded by the defendant to the Commissioner of Internal Revenue at Washington, D. C.

"(16) The claim for a refund was, in accordance with the act of Congress and the regulations of the Secretary of the Treasury established in pursuance thereof, lodged and filed with the Commissioner of Internal Revenue in Washington, D. C., on or about September 10, 1926.

"(17) More than six months have elapsed since the date of filing the claim for refund without the Commissioner having rendered a decision thereon, and subsequently the Commissioner has rejected said claim for refund in its entirety."

Section 301(a) and section 302(e) of title 3, part 1, Estate Tax, of the Act of June 2, 1924 (26 USCA § 1092, note, and § 1094, note), constitutes the provisions of the law under which the tax in question was assessed and collected. These sections, in so far as they are pertinent, provide as follows:

"Section 301. (a) In lieu of the tax imposed by title IV of the Revenue Act of 1921, a tax equal to the sum of the following precentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act, whether a resident or nonresident of the United States."

"Section 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than a fair consideration in money or money's worth."

■ The question presented to the court for decision is whether the personal and real property owned and held by William B. Lewis and Anna Laura Lewis, husband and wife, as tenants by entireties under the laws of Pennsylvania, is taxable under the provisions of the act of Congress cited, on the death of the husband on September 25, 1925. [2] The government is endeavoring to tax the interest of one tenant by entirety at his decease, on its transfer to the wife, the other tenant by entirety. Under the laws of Pennsylvania, there is no transfer or passing of any interest or estate from one tenant by entirety to the other on the death of either. The estate of tenants by entireties is a unit and not divisible; the whole continues in the survivor, and the estate of a deceased tenant by entirety ceases and is not transferred.

In Stuckey v. Keefe's Executors, 26 Pa. 397, the tenancy of husband and wife by entireties was defined by the Supreme Court of Pennsylvania, and the legal consequence of such tenancy stated by Lewis, Chief Justice, as follows:

"A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit, made up of divisible parts; that of husband and wife is also a unit, but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased cotenant. In the last case, although there are two natural persons, they are but one person in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in

the survivor, the same as it would continue in a corporation after the death of one of the corporators. [Rogers v. Grider] 1 Dana [Ky.] 244; [Taul v. Campbell] 7 Yerger [Tenn.] 319 [27 Am. Dec. 508]. This has been the settled law for centuries. The distinction may seem a nice one, but it is founded upon the nature of marriage and the rights and incapacities which it establishes. Co. Lit. 6; 1 Thom. Coke, 853; 2 Bl. Com. 182; 5 T. R. 652; 2 Vern. 233; Skin. 182; [Jackson v. McConnell] 19 Wend. [N. Y.] 175 [32 Am. Dec. 439]; [Thornton v. Thornton] 3 Rand. [Va.].184; [Rogers v. Benson] 5 Johns. Ch. [N. Y.] 437; [Taul v. Campbell] 7 Yerger [Tenn.] 319 [27 Am. Dec. 508]; [Fairchild v. Chastelleux] 1 Barr [Pa.] 176 [44 Am. Dec. 117]; [Johnson v. Hart] 6 W. & Ser. [Pa.] 319 [40 Am. Dec. 565]."

In Beihl v. Martin, 236 Pa. 519, 84 A. 953, 42 L. R. A. (N. S.) 555, Mr. Justice Stewart, delivering the opinion of the Supreme Court of Pennsylvania, states the nature of an estate by entireties in Pennsylvania in the following language:

"It may be that, because of modern innovations on the common law respecting the property rights of married women, the venerable estate known as estate by entireties has outlived the purpose of its creation and is out of harmony with present conditions. However this may be, if change is desired, it must come through legislative action, and not through judicial construction. This estate is too well established and too well defined to be subject to judicial impairment. Recognizing its very anomalous character, we have been careful, as all our cases show, to give effect to these peculiar incidents which naturally and logically attach, especially to its chief distinguishing incident, which exempts it from the ordinary legal process to which all other estates are subject. Fundamentally the estate rests on the legal unity of husband and wife; it is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seized of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate. 'A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit made up of divisible parts; that of husband and wife is also a unit, but it is made up of indivisible parts. In the first case there are several holders of different

moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased cotenant. In the last case, although there are two natural persons, they are but one person in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries.' Stuckey v. Keefe, 26 Pa. 397."

In Gasner, Appellant, v. Pierce et al., 286 Pa. 529, 134 A. 494, Mr. Justice Sadler, speaking for the Supreme Court of Pennsylvania, defined an estate by entireties as follows:

"The property in question was admittedly owned by Mr. and Mrs. Pierce, and, as a result, a tenancy by entireties arose, which has been defined as an interest 'held by a husband and wife together so long as both live, and, after the death of either, by the survivor so long as the estate lasts.' 13 R. C. L. 1096. 'The essential characteristic of [the estate] is that each spouse is seized of the whole or the entirety, and not of a share, moiety, or divisible part. * * * There is but one estate, and, in contemplation of law, it is held by but one person.' 30 C. J. 564; 13 R. C. L. 1114. This interest, arising from the unity of person, has not been abolished by our so-called Married Women's Acts (13 R. C. L. 1101), passed April 11, 1848, P. L. 536 (Diver v. Diver, 56 Pa. 106), June 3, 1887, P. L. 332 (Bramberry's Estate, 156 Pa. 628 [27 A. 405, 22 L. R. A. 594, 36 Am. St. Rep. 64]), or June 8, 1893, P. L. 344 (In re Meyer's Estate [No. 1] 232 Pa. 89 [81 A. 145, 36 L. R. A. (N. S.) 205, Ann. Cas. 1912C, 1240]). Nor is it affected by the more recent legislation (May 24, 1923, P. L. 446 [Pa. St. Supp. 1928, §§ 10172a1–10172a5]; May 13, 1925, P. L. 649 [Pa. St. Supp. 1928, § 10172c, note]) authorizing the sale of such estates, when ordered to secure support of the wife, or after divorce has been granted.

"Neither husband nor wife, in whom property has jointly vested, can sell or assign their individual rights therein without the joining of the other, or dispose even of the expectancy of survivorship (Beihl v. Martin, 236 Pa. 519 [84 A. 953, 42 L. R. A.

(N. S.) 555]), and creditors of either acquire no enforceable lien by obtaining judgment or title by sale on execution (McCurdy v. Canning, 64 Pa. 39). The right of each party to the present enjoyment of the estate, during its continuance, is not to a part, but to all of it. In re Meyer's Estate, supra; In re Meyer's Estate (No. 2) 232 Pa. 95 [81 A. 147]."

Under the law in Pennsylvania, an estate by entireties is a unit and indivisible, and on the death of either spouse no estate is transferred, and no new estate is acquired by the survivor. The law of Pennsylvania must be accepted as the law in this case, so for as it relates to the nature and incidents of an estate by entireties. Clarke v. Clarke, 178 U. S. 186, 20 S. Ct. 873, 44 L. Ed. 1028.

Since under the law of Pennsylvania an estate by entireties is a unit and indivisible, and upon the death of one of the tenants the interest or estate of the deceased tenant ceases, and there is no transfer of any estate, or any part thereof, to the survivor, the survivor has the entire estate and takes no new estate. The value of such estate may not be included in the gross estate of the decedent, and hence there is nothing upon which to impose an estate tax under the Revenue Act of 1924.

This position is supported by the decisions of the United States Board of Tax Appeals in Appeal of George R. Dyer, H. Kierstede Hudson, and T. Hendry Walter, Executors of Estate of Charles I. Hudson, 5 B. T. A. 711; Appeal of James C. Murphy and Mercantile Trust & Deposit Co. of Baltimore, Executors, Estate of John H. Windfelder, 5 B. T. A. 952; Appeal of Provident Trust Co. of Philadelphia and Charles Sinkler, Administrators, Estate of James K. Young, 5 B. T. A. 1004; Appeal of Harry A. Smith and Ethel G. Meinel, Executors, Estate of Edward Meinel, Petitioners, v. Commissioner of Internal Revenue, Respondent, 6 B. T. A. 341, and also by opinion of Coleman, District Judge, in James E. Tyler, Jr., and William G. Tyler, Administrators of the Estate of James E. Tyler, Deceased, v. United States of America, 28 F.(2d) 887, in the District Court of the United States for the District of Maryland, filed October 19, 1928.

In Appeal of the Provident Trust Co. of Philadelphia and Charles Sinkler, Administrators, Estate of James K. Young, supra, it was held that "the common-law doctrine of estates by the entirety obtains in Pennsylvania, and as, under the common law, there was no transfer of such estate to the surviving spouse upon the death of the decedent, the value of such estate may not be included in the gross estate of the decedent."

█ The conclusion of the court is that the property in question was vested in the decedent and his wife as tenants by entireties; that there was no transfer of any interest or estate to the wife upon the death of the decedent, and consequently there was nothing to which a federal estate tax could apply.

█ If it be held that the Revenue Act cited is intended to apply to estates by entireties in Pennsylvania, the court would be compelled to hold that so much of the Revenue Act as applies to the taxation of estate by entireties in Pennsylvania is in violation of section 2, clause 3, and section 9, clause 4, of article 1 of the Federal Constitution, and the Fifth Amendment to the Constitution. Tyler v. United States of America, supra. It therefore follows that the tax in question was illegally collected, and must be returned to the plaintiff, with interest.

And now, February 2, 1929, it is ordered that the plaintiff, the Dime Trust & Safe Deposit Company, have judgment against the defendant, David W. Phillips, collector of internal revenue, Twelfth district, for the sum of $18,915.12, with interest at 6 per centum per annum from September 10, 1926.