## CONNECTICUT FIRE INS. CO. v. McNEIL.

Circuit Court of Appeals, Sixth Circuit.
November 13, 1929.

No. 5149.

R. Lee Bartels, of Memphis, Tenn., for appellant.

A. L. Heiskell, of Memphis, Tenn. (M. J. Anderson, of Memphis, Tenn., on the brief), for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. Appellee, plaintiff below, purchased certain real estate in Somerville, Tenn., taking title in the name of himself and his wife. Thus, under the law of Tennessee, the tenancy created was the ancient common-law tenancy by the entirety. About the time of this purchase the agent of the appellant insurance company solicited the writing of the fire insurance upon the residence constructed upon the property and, McNeil consenting, a policy for $4,500 was issued in the name of McNeil alone, but containing a "loss payable" clause to McNeil's vendor, as her interest might appear (for balance of purchase-money mortgage), subject, however, to all the terms and conditions of the policy. At the end of the year the policy was "renewed," and within the second year loss occurred.

The policy contained a provision that it should be void "if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple." Payment of the loss being refused on the ground that the insured was not the sole and unconditional owner, nor the owner in fee of the ground upon which the building was located, McNeil brought his bill in equity to have the policy reformed by setting forth the true title. Reformation was refused by the District Court upon the ground that there had been no mutual mistake; but that court held that McNeil, as tenant by the entirety and under a proper construction of the contract, was the sole and unconditional owner and entitled to recover. From this judgment the insurance company appeals.

We pass without approving or disapproving the ruling of the District Judge that the contract could not be reformed for want of mutual mistake. The ground asserted for reformation was rather that through inadvertence and oversight of both parties the policy

had failed to express their common intent, than that there had been any mutual mistake of fact operating as inducement, and this court has frequently held that where such policy of insurance failed to properly express the manifest intention of both the insurer and the insured it might be reformed so as to conform to the actual intent of the parties. Forkner v. Twin City Fire Ins. Co., 19 F. (2d) 419 (C. C. A. 6); Firemen's Ins. Co. v. Brooks, 19 F.(2d) 277 (C. C. A. 6); Norwich Union Indemnity Co. v. Kobacker & Sons Co., 31 F.(2d) 411 (C. C. A. 6). Compare Philippine Sugar Estates Development Co. v. Philippine Islands, 247 U. S. 385, 389, 38 S. Ct. 513, 62 L. Ed. 1177; Northern Assurance Co. v. Grand View Bldg. Ass'n, 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Snell v. Insurance Co., 98 U. S. 85, 25 L. Ed. 52. In the recent case of Great American Ins. Co. v. Johnson, 25 F.(2d) 847, 849 (C. C. A. 4), the court declares the intent of the parties as being "to insure the owners of the property against loss by fire," finds that by mutual mistake the policy has failed to give expression to such intention, and justifies reformation of the contract, saying, "to allow the company to take advantage of such a mistake would be unconscionable, and there is no doubt that equity can and should grant relief under such circumstances."

■ Courts of equity cannot make a new or substantially different contract for the parties. In the present case, however, McNeil had purchased this property with his own funds, had obligated himself for the payment of the purchase-money mortgage, had taken title by the entirety for the protection of himself and his wife, and had insured the property partially for the protection of his vendor. Immediately upon the completion of the first of these arrangements, the agent of the insurance company solicited the insurance, and there can be little doubt that the purpose of both parties to the insurance contract was the indemnification of the purchaser in his new ownership or that the policy would have as readily been issued to McNeil as tenant by the entirety as to him as sole owner in fee simple. No inquiry was made by the agent as to the state of the title. No misrepresentation was made by McNeil. Under such circumstances it might well be that the policy should be reformed to conform it to the intention of the parties even in the absence of other mutual mistake than that it did not, through accident or inadvertence, express their true intent. While we do not consider it necessary to determine this question, it is advisable to make the foregoing statement that, in passing the question, we are not approving the position of the District Court as applicable to other cases generally, or holding that a court of equity is powerless to relieve under such circumstances.

■ Assuming, therefore, without deciding, that the contract was not subject to reformation, the first question which is suggested is as to the jurisdiction of a court of equity to grant relief purely legal in its nature after denial of all equitable remedy. Doubtless the court might have dismissed the bill in its entirety and have remitted the plaintiff to his remedy at law (Kramer v. Cohn, 119 U. S. 355, 7 S. Ct. 277, 30 L. Ed. 439); or, having decided that an equitable action would not lie, but that the plaintiff could recover at law, the suit might have been transferred to the law side of the court under Equity Rule 22 (28 USCA § 723), and the legal issues there determined. But we are of the opinion that retention of jurisdiction will not defeat the judgment where, as here, there was no objection and no obvious reason for a jury trial.

■ The general rule has been often stated, that, equity "having properly acquired jurisdiction of a cause for any purpose, it should dispose of the entire controversy and its incidents, and not remit any part of it to a court of law." Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 520, 37 S. Ct. 673, 682, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; McGowan v. Parish, 237 U. S. 285, 296, 35 S. Ct. 543, 59 L. Ed. 955; Camp v. Boyd, 229 U. S. 530, 552, 33 S. Ct. 785, 57 L. Ed. 1317. More specifically, "if a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief * * * and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that * * * the plaintiff is entitled to the only alternative relief possible of damages, the court there may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages." 1 Pomeroy Equity Jurisprudence (4th Ed.) § 237. Even though the chief equitable relief sought be denied, the court has power to grant other relief of an equitable nature forming no part of the original prayer, such as relief from penalties pendente lite, if there was reasonable ground for plaintiff originally seeking equitable relief (Oklahoma Operating Co. v. Love et al., 252 U. S. 331, 338, 40 S. Ct. 338, 64 L. Ed. 596), and the more recent decisions seem to indicate a similar power in the court as to legal issues, in the inter-

est of avoidance of multiplicity of actions and the early termination of litigation.

Here, in view of the position taken by the defendant, the right of the plaintiff to sue at law without reformation of the contract was, to say the least, exceedingly doubtful. The case was not one in which the equitable relief sought was the chief purpose of the litigation and the legal relief merely incidental, such as in Munger Laundry Co. v. National Marking Mach. Co., 252 F. 144 (C. C. A. 8). Recovery upon the policy was the main purpose; reformation merely an apparently necessary condition precedent. A right to recovery at law was not so apparent as to require the plaintiff to speculate upon the chance of recovery at law. This doubt alone was an answer to the defense of adequate relief at law. Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 39 L. Ed. 578; Union Pac. R. R. Co. v. Weld County, 247 U. S. 282, 286, 38 S. Ct. 510, 62 L. Ed. 1110; Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638. "Distinctively equitable relief" was sought. The court properly acquired and took jurisdiction of the cause. The evidence was heard and the case submitted. No objection was raised, generally or specifically, to the court retaining jurisdiction to decide the legal issue after the equitable issue was determined adversely to plaintiff. The lack of jurisdiction in the court is not so apparent as to permit the judgment to be now so defeated.

The remaining question may be stated as whether the husband holding as tenant by the entirety is to be considered for insurance purposes the sole and unconditional owner in fee simple. Obviously there is a marked technical difference between sole tenancy in fee simple and tenancy by the entirety, but it may well be doubted if this difference is known to the layman. Perhaps more precisely, the question is whether under the law of Tennessee (for both parties concede, and we therefore assume, that law to be binding upon us in the determination of the present case, Sims v. American Central Ins. Co., 296 F. 115 [C. C. A. 6]), the fact that the insured held as tenant by the entirety is within the stipulated forfeiture breach of the condition that he be the sole and unconditional owner in fee simple.

By the common law of Tennessee "the husband and wife are as one person in law; the legal existence of the wife is incorporated into that of the husband. * * * As one of the necessary results of this unity of persons in husband and wife, it has always been held that where an estate is conveyed or devised to them jointly, they do not take in joint tenancy; constituting one legal person, they cannot be vested with separate or separable interests; they are said, therefore, to take by the entireties; that is, each of them is seized of the whole estate, and neither of a part." Ames v. Norman, 36 Tenn. (4 Sneed) 683, 692, 70 Am. Dec. 269. In this union the husband is the dominating personality and representative of the union; the husband has full control of the estate and the right, to the exclusion of his wife during coverture, to the rents, profits, and usufruct of the property so held by himself and wife as tenants by the entireties. He may sue in his own name for trespass without joining the wife, and take the benefit of the recovery. Hux v. Russell, 138 Tenn. 272, 197 S. W. 865. The same rule prevails in North Carolina. West v. Aberdeen, etc., R. Co., 140 N. C. 620, 53 S. E. 477, 6 Ann. Cas. 360.

Another interesting characteristic of a tenancy by the entirety is that no new estate passes to the survivor upon the death of either spouse. There is but one estate and, in contemplation of law, it is held by but one person. Accordingly, no estate, transfer, or inheritance taxes may be collected as incident to whatever change occurs upon the death of either spouse. Dime Trust & Safe Deposit Co. v. Phillips, Collector, 30 F.(2d) 395 (D. C. Pa.).

So also tenancies by the entirety may exist in all manner of estates, in fee, in tail, for a life[1] or for years, and whether the estate be legal or equitable, in present enjoyment or in remainder. In the case of In re Berry, 247 F. 700, 706, it was expressly held by the District Court for the Eastern District of Michigan that the interest of husband and wife in land "under a contract for the sale of such land to such husband and wife" was an estate by the entirety, although such interest was but equitable in its nature. See, also, note, 30 L. R. A. 319; 30 C. J. 566.

A number of decisions of other states have been cited by counsel for the insurance company as sustaining the insurer's contention upon the specific point here in issue. These decisions all interpret the common law of other states as modified and affected by the statutes of such states and as distinguished from the law of Tennessee. In Ætna Ins. Co. v. Resh, 40 Mich. 241, the applicant for insurance signed a written application in which he answered "None" to a specific inquiry as to whether any other person had any interest

---

[1] Truitt v. City of Battle Creek, 205 Mich. 180, 183, 171 N. W. 338.

whatsoever in or to the property. It was there held that such answer was a warranty and was false, where the title was in the name of the applicant and his wife as tenants by the entirety. See, also, dictum in Clawson v. Citizens' Mut. Fire Ins. Co., 121 Mich. 591, 80 N. W. 573, 80 Am. St. Rep. 538. The point seems to be squarely decided in Western Assur. Co. v. White, 171 Ark. 733, 286 S. W. 804, 806, 48 A. L. R. 349, but the court places its decision largely upon the effect of the Married Women's Emancipation Act of Arkansas, saying, at page 737 of 171 Ark., 286 S. W. 804, 48 A. L. R. 349: "It follows, therefore, that the husband has no longer, as at common law, control over the interest of his wife in an estate by the entirety, but she has the right to an equal and separate enjoyment of the proceeds derived from such an estate." In Arkansas, as in New York (Hiles v. Fisher, 144 N. Y. 306, 39 N. E. 337, 30 L. R. A. 305, 43 Am. St. Rep. 762), the husband's interest in an estate by the entirety is subject to execution during coverture, and the Arkansas case cites as authority the New York case of Genesee Falls, etc., Ass'n v. U. S. Fire Ins. Co., 16 App. Div. 587, 44 N. Y. S. 979, in which the point was conceded by counsel without controversy. In Schroedel v. Humboldt Fire Ins. Co., 158 Pa. 459, 27 A. 1077, the defense was sustained to a policy issued to the husband when the title, as stated by the court, was in the husband and wife "jointly." It is probable, however, that this was a case of tenancy by the entirety.

Tending to the contrary doctrine, in Turner v. Home Ins. Co., 195 Mo. App. 138, 189 S. W. 626, the policy was issued to the husband alone, and he was permitted to recover upon the theory that he was the sole equitable owner in fee, having testified that he was illiterate; that he had directed the deed to be made to himself individually; that he had paid the entire purchase money; and that he had no knowledge of the inclusion of his wife as one of the grantees. This case was followed in Monpleasure v. Home Ins. Co., 214 Mo. App. 530, 259 S. W. 815, where the insured had advanced the entire purchase money and had simply included his wife as one of the grantees under the belief that by so doing he was only avoiding administration expenses in case of death, without affecting his quality of ownership. While these two Missouri Cases are not direct authority for the insured in this case, they are precisely in point upon the question of equitable title, in the absence of evidence showing intention to make a present gift to the wife, which is also suggested by the facts of the present case.

It is earnestly insisted by counsel for appellant that one tenant by the entirety cannot be the *sole* and unconditional owner, in that the mere statement of this position recognizes an interest in the other tenant by the entirety. But, as has been pointed out, under the laws of Tennessee there is but a single owner. Compare also Gasner v. Pierce et al., 286 Pa. 529, 134 A. 494. The husband and wife are as one person in law. The legal existence of the wife is "incorporated into" that of the husband. Each is seized of the whole estate and neither of a part. The Married Women's Emancipation Act of Tennessee (chapter 126, Pub. Acts 1919) specifically provides that nothing therein "shall be construed as abolishing tenancy by the entireties." Section 2. It is not strained construction, therefore, to hold that such tenancy still exists with all its common-law attributes as defined by the Supreme Court of that state; and it would seem to be immaterial whether the origin of these attributes lay in jure mariti or whether they existed as an incident to the estate itself. Admittedly the estate so held by the entirety is a fee-simple estate. Thus, as between insurer and insured, the insured in a very true sense is seized of a fee-simple estate in the whole of the property. Ordinarily there can be no interest beyond this. The contract was made in Tennessee and was to be there performed. Theoretically, at least, the parties had in contemplation these peculiarities of the Tennessee law, and the language of the contract was adopted to cover situations ordinarily arising in that state. Under these circumstances, we conclude that McNeil must be held to fall within the policy definition of his ownership.

It is unnecessary to consider whether the same is also true of his wife. If so, this is one of the anomalies arising under this peculiar form of tenancy and due to the fiction of the common law that husband and wife are one. Nor do we decide that the husband is entitled to the sole and exclusive enjoyment of the proceeds of the policy. It might well be that, the claim of the mortgagee having been satisfied, any surplus would be held by the husband as trustee for the entirety and the wife's interest thus preserved. That she had an interest during coverture cannot be denied, and such interest was so far independent of her husband's that he could not alienate it nor could it be taken upon execution for his debts. Cole Mfg. Co. v. Collier, 95 Tenn. 115, 31 S. W. 1000, 30 L. R. A. 315, 49 Am. St. Rep. 921. We decide solely that, as limited to the state of Tennessee and to contracts made in contemplation of the there

existing law, the husband holding an estate in fee simple by the entirety is within the policy requirement of sole and unconditional ownership.

The judgment of the District Court is affirmed.