## Weiner v. Weiner

N. L. *Posner*, for plaintiff.

A. W. A. *Cowan*, for defendant.

LEWIS, J., February 7, 1949.—This bill for an accounting and other relief avers that plaintiff purchased a pharmacy and lunch business, also the real estate situated at 1200 Frankford Avenue, Philadelphia, title having been taken in the names of himself and his wife; that the parties had a joint safe deposit box in which were deposited a number of United States savings bonds registered in their joint names, and several other bonds registered in the name of plaintiff alone; that defendant has taken possession of much of this property and is using it for her own purposes, and that defendant has mistreated plaintiff in various ways.

The answer admits joint ownership of the property and avers that it was all purchased with joint funds; denies that defendant mistreated plaintiff; admits the taking of some of the jointly owned property, but

charges that plaintiff converted to his own use at least an equal amount of the joint holdings.

From the pleadings and the evidence we make these

### Findings of Fact

1. Plaintiff and defendant are husband and wife, and the marriage still subsists.

2. On January 15, 1940, the parties purchased a pharmacy and luncheonette at 1200 Frankford Avenue, Philadelphia, and later, on December 18, 1942, they purchased the premises, taking title to both the business and the real estate in both names, as tenants by the entireties.

3. The business was conducted as a joint enterprise, and the proceeds were deposited in a joint bank account.

4. The parties purchased and held a total of $5,250, face value, in United States savings bonds, all bought in both names, with the exception of one $1,000 bond, which is in the name of plaintiff. These bonds were deposited in a joint safe deposit box to which by mutual agreement they both had access.

5. Both plaintiff and defendant have removed securities from the safe deposit box and money from the till and bank account of the joint enterprise from time to time, in accordance with the mutual trust and consent implied by their arrangement as tenants by the entireties.

6. Plaintiff and defendant have each collected rents from tenants occupying apartments in the premises, in accordance with their rights as tenants by the entireties.

### Discussion

This is a controversy between husband and wife, involving not only property rights, of which equity may take cognizance, but also personal issues, which equity will not attempt to determine. Plaintiff and

defendant, husband and wife, jointly own and hold title to a store and apartment house. Together they operate the store as a pharmacy and luncheonette. The husband is a registered pharmacist. They also occupied, until the husband withdrew, one of the apartments in the building and rented the others. The proceeds from the rents and the operation of the store have been deposited in a joint bank account, and from the accumulations of the business they have purchased a number of Government bonds, which have been deposited in a safe deposit box, to which both have had access. Since all the property, both real and personal, with the exception of one bond, is held in their joint names, the parties are tenants by the entireties.

Our courts have long held, indeed it has been the settled law for centuries, that:

"A conveyance to husband and wife creates neither a tenancy in common nor a joint tenancy. The estate of joint tenants is a unit made up of *divisible parts;* that of husband and wife is also a unit; but it is made up of *indivisible parts* . . .": Stuckey v. Keefe's Executors, 26 Pa. 397, 399.

The conception is that husband and wife, although they are two natural persons, are but one person in law. This theory and the reasons behind it were well expressed by Mr. Justice Woodward in Ritter v. Ritter, 31 Pa. 396, as follows:

"One of the favourite maxims of the common law is, that marriage makes the man and woman one person in law, and of course it excludes the possibility of a civil suit between them. Now this characteristic of the contract may be considered a fiction, an absurdity, a fossil, or whatever else the necessities of the new era may denominate it, but it . . . was designed for the protection of the woman, and leads to that identification of sympathies and interests, which secures to families and neighborhoods the blessings of harmony and

good order. . . . In just so far as you sever the material interests of husband and wife, you destroy the sympathies which constitute the oneness of the relation, and degrade the divine institution to mere concubinage. Nothing could so complete that severance and degradation, as to throw open litigation to the parties. . . . The flames which litigation would kindle on the domestic hearth would consume in an instant the conjugal bond. . . ."

As a result of this conception and the reasons for it, the estate by entireties has both rights and incapacities. These incapacities are stated in Stuckey v. Keefe's Executors, supra, as follows:

"Tenants in common may sell their respective shares. They are compellable to make partition. They are liable to reciprocal actions of waste and of account; and, if one turns the other out of possession, an action of ejectment will lie against him. These incidents cannot exist in an estate held by husband and wife. No action of partition, or waste, or account, or ejectment can be maintained by one against the other."

Hence, under the law of this and many other jurisdictions the courts have taken the position that it is impossible to have an accounting or a partition of property held by the entireties, with the consequence that the institution of marriage has been made more secure, the peace and harmony of domestic life has been better preserved and the courts have greatly benefitted, in that they have been free from the necessity of hearing just such actions as this.

Within the last generation there has been a gradual breaking down of the rule against entertaining such litigation as long as the marriage exists. At first our courts recognized the right to an accounting and to a division of the property after a divorce a vinculo matrimonii, and this right was established by statute: Act of May 10, 1927, P. L. 884. The elimination of

the necessary unity of person by the dissolution of the marriage having removed one of the essential requirements of an estate by the entireties, it was not difficult to follow the logic of the decision to treat the estate as a tenancy in common after divorce, and hence to permit accounting and partition. However, it now appears that by a series of opinions our highest court has adopted the view that because of the fact the property is held by entireties, hence "for the mutual benefit of both", it becomes impressed with the elements of a trust, so that if one of the parties should attempt to use the property for other than the mutual benefit, the other party has a right to an accounting.

The case of Madden et al. v. Gosztonyi S. and T. Co., 331 Pa. 476, contains an extensive discussion of the nature of estates by the entireties and of many of the cases in this jurisdiction relative to such estates. It discusses at length the basic theory and the decisions by which our courts have reached their present attitude. In Gasner v. Pierce, 286 Pa. 529, the court held that a payment of rent made by a tenant in good faith to the wife, one of two tenants by the entireties, was a proper payment. However, this language was used:

"Here, though either husband or wife could lease, both were entitled to the income. When the former acted, it was presumably with her authority, and on her behalf. Whichever collected the rent, the appropriation of it must be for their joint use, and the receiver was bound to account to the other. . . ."

Later, in Berhalter v. Berhalter, 315 Pa. 225, the Supreme Court affirmed a decree of the lower court permitting a bill for accounting and a division of the fund that was held by the entireties. The dispute in Berhalter v. Berhalter had many elements similar to the matter before us now, as the subject matter was a fund in a bank account in joint names. The manner by which the Supreme Court arrived at its conclusion will

be best understood by reference to the opinion itself, which states as follows (pp. 227-229):

"There is no dispute between the parties that the agreement signed by them with the bank constituted the fund an estate by entireties, having the right of survivorship as an incident: Leach's Est., 282 Pa. 545. Even though there had been no such agreement, a deposit of money in the names of husband and wife, or, of husband or wife, using both names, creates an estate by entireties: Sloan's Est., 254 Pa. 346; Blick v. Cockins, 252 Pa. 56; Klenke's Est., No. 1, 210 Pa. 572. The incidents of such an estate are unity of interest, title, time and possession, with the right of survivorship. . . . One of the parties cannot destroy the incidents of the entirety by any act of his or hers: Beihl v. Martin, 236 Pa. 519. It is the contention of appellant that when the parties expressed in the agreement that "either of them" could withdraw all or any part of the fund, one of the elements essential to an estate by entirety was lacking, which she describes as the unity of control, but, while unity of control must exist, O'Malley v. O'Malley, 272 Pa. 528, this is bound up in the four incidents of such an estate. The fund withdrawn is still subject to the legal status of the estate, and it has stamped on it in the hands of the one who withdrew it all the elements of a trust. Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto. . . . It has long been held that deeds of grant will operate to extinguish the right of survivorship and destroy a joint tenancy. Such a result is predicated on an agreement, and an estate by entirety with the incidents of survivorship

may always be destroyed by agreement of the parties. There can be no question that the husband and wife could have gone to the bank and by signing the necessary check have withdrawn the money from the bank and divided it among themselves.

"When the wife in her own behalf and for her own use withdrew part of the fund from the bank, this action was tantamount to an offer to her husband to destroy the estate by entirety. As stated in Swolski v. Swolski, 75 Pitts. L. J. 534, defendant appropriated to her own use, the funds which plaintiff and defendant agreed to hold in an estate by entireties and this constituted in law an election on her part to divide the fund. In this case, when appellee in a request for a conclusion of law asked for a division of the fund, this constituted an acquiescence in appellant's offer or election to divide the fund. In other words, by the act of the parties they agreed to divide the property subject to the estate by entirety. . . ."

The same theory as that expressed in Berhalter v. Berhalter, determining the question of an accounting as to entireties, was followed by the Supreme Court in Werle v. Werle, 332 Pa. 49 (1938), which opinion affirmed an appeal from a bill in equity in our own court (decided by Kalodner, J.).

It will be seen from these cases that the process of the law has shifted from the position that right to an accounting and partition is one of the incapacities inherent in the very nature of an estate by the entireties, to the opposite position that, since the parties hold the property "for their mutual benefit", they are entitled to an accounting where one party attempts to use it for one's own use, and such an attempt is construed to be an offer to terminate the estate, which offer the other party accepts by asking for partition. The laudable reasons for the original strict position of the court, namely, to prevent the degradation that

would result from litigation by married persons, which "would consume in an instant the conjugal bond", appears to have been forgotten.

In Wakefield v. Wakefield, 149 Pa. Superior Ct. 9 (1942), our Superior Court arrived at a conclusion opposite to the cases cited, and adhered to the strict original view, that so long as the marriage subsists, a bill in equity for an accounting for rents collected by one tenant by the entireties must be dismissed. It is interesting to note that the court reviewed the same cases discussed by the Supreme Court in Madden et al. v. Gosztonyi S. & T. Co., supra, citing that case itself in arriving at the conflicting conclusion. However, the Superior Court did not cite or refer to the Supreme Court's decisions in Berhalter v. Berhalter and Werle v. Werle. It did, however, cite Gasner v. Pierce et al., supra, in which the Supreme Court, by the language hereinbefore quoted, referred to rents collected by one tenant and stated "the receiver was bound to account to the other". The Superior Court did not distinguish the cases, which could, however, be distinguished. Gasner v. Pierce et al., supra, was an attempt by a husband to collect a second time rent from the leasehold tenant, and did not involve the question of accounting between tenants by the entireties. Hence, the language relative to accounting was dicta. The court in the Wakefield case stated, at page 13:

". . . While the marriage subsists it makes no difference which of the parties leases the property and obtains the rents; the leasing by either is for the benefit of them in that relation. O'Malley v. O'Malley, supra, p. 533; Madden et al. v. Gosztonyi S. & T. Co., 331 Pa. 476, 488, 200 A. 624. Consequently, it being admitted that plaintiff and defendant are still wife and husband, under the circumstances set forth in the bill neither could require an accounting by the other of the rents from the real estate owned by them as ten-

ants by entireties. See Meyer's Estate (No. 2), 232 Pa. 95, 96, 81 A. 147; O'Malley v. O'Malley, supra, pp. 535, 536."

It would appear that the Supreme Court is following one liberal trend, while the Superior Court in the later case is adhering to the original strict theory and reasons in refusing an accounting between tenants by the entireties while the marriage subsists. We may, therefore, select the interpretation that accords with our own views.

The holding that it is a breach of trust or a fraud for one of two tenants by the entireties to use the property for one's self appears to overlook the nature of the estate, with its unities, and some of the essential elements of fraud. Husband and wife each own the property in its entirety. This entire ownership exists both by the nature of the estate and by the contract of marriage which endowed each with the other's properties. True it is that statutes have broken down the endowment contract of marriage as to separately owned property, but this has not occurred as to property held by the entireties, while the marriage subsists.

The contention that the attempt by one party to use the property for himself or herself constitutes an offer to terminate the relationship that is accepted by the other party's act in seeking an accounting seems to mold an "agreement" out of strange constituents. It also overlooks the basic reasons for refusing an accounting, the avoiding of the destructive consequences involved in litigation between married persons.

So long as the marriage subsists, the contract of marriage, coupled with the unities of the estate, in our view must be held to make the parties immune to litigation over petty differences as to the jointly owned property. The present case and the testimony offered at its hearing afford excellent reasons why we should adhere to the old rule and should refuse to be involved

in the intimate issues which necessarily furnish the background for such litigation. If the parties no longer love and cherish one another and grounds for divorce do exist, the termination of the marriage contract would appear to be the first procedure, and not an accounting for property. This conclusion is also supported by a review of the cases in which an accounting has been permitted, for in all those cases the true marriage relationship had ceased to exist before the accounting was sought, so that accounting could have awaited the actual termination of the marriage. It is a mockery to allow the relationships of marriage to continue, while at the same time decreeing the parties to be in the positions of defaulting trustee and wronged beneficiary, or defrauder and victim. The marriage relationship, involving the basic contract between the parties, should be given the first consideration.

For all of which reasons we make the following

### Conclusions of Law

1. The parties hold premises 1200 Frankford Avenue, Philadelphia, as tenants by the entireties, and also own and operate the pharmacy and luncheonette business in the same right.

2. Plaintiff is not entitled to an accounting, during the continuation of the marriage, of property held with his wife as tenants by the entireties.

3. Plaintiff has an adequate remedy at law relative to the bond owned individually by him.

4. Equity will not intervene to prevent disputes and altercations between husband and wife.

5. The bill should be dismissed.

Accordingly, we make the following

### Decree Nisi

And now, to wit, February 7, 1949, this cause having come to be heard upon bill, answer and proofs, it is ordered, adjudged and decreed:

1. The bill in equity is dismissed.

2. The costs of these proceedings are to be borne by plaintiff.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 10 days, either party may present a form of final decree to be entered in the case.